NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 20, 2007[*]
Decided April 6, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 06-2632

MILTON S. JONES,
    *Petitioner-Appellant,*

    *v.*

UNITED STATES OF AMERICA,
    *Respondent-Appellee.*

Appeal from the United States District
Court for the Eastern District of
Wisconsin.

No. 02-C-1007

Rudolph T. Randa,
*Chief Judge.*

**O R D E R**

Milton Jones was convicted after a jury trial of possession of a firearm by a felon, 18 U.S.C. § 922(g)(1). Instead of pursuing a direct appeal, Jones moved to vacate his conviction under 28 U.S.C. § 2255. He claimed, as relevant here, that trial counsel had a conflict of interest and that the government failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

district court denied relief but issued a certificate of appealability limited to these two questions. We affirm.

At trial Leslie Barber, a 28-year veteran of the Milwaukee Police Department, testified that while on patrol in July 2000 he saw a car with four passengers inside stop in front of a club, blocking traffic.[1] He saw Jones exit the car, pull a gun from his waistband, and point it several times toward the crowd outside the club. After someone from the crowd approached Jones, he put the gun back in his waistband, got into the car's driver's seat, and drove off. Barber and other officers stopped the car and, after ordering the passengers to get out, found the gun on the driver's seat. Jones, in contrast, testified that he was waving a cell phone and never possessed the gun. Jones also called four of his friends to testify that it was indeed a cell phone he was holding outside the club. Only one of the four, Stanley Blalock, was in the car with Jones, and on rebuttal Officer Patrick Fuhrman testified that immediately after the stop Blalock told him that it was Jones who had been waving the gun.

The conflict claim focuses on another occupant of the car, Maurice Withers, who was jailed on another matter after the stop. Defense counsel, Michael Steinle, learned before trial that Withers confessed to a jailhouse snitch that it was his gun and that he abandoned it in the car when the police approached. Steinle interviewed Withers, who confessed to him as well, but afterwards Withers gave the police a written statement saying it was Jones's gun, and that Jones's family had offered him money to say it was his. This much is not disputed. But in his § 2255 motion, Jones also alleged that Withers "suggested" to the police that Steinle tried to "improperly influence Withers" to take responsibility for the firearm. Jones claimed that he wanted Withers and the snitch, Jerry Christian, to testify at trial, but Steinle would not call either because he "feared that Withers would make untrue statements" that would damage his professional reputation.

As for his *Brady* claim, Jones stipulated at trial that no fingerprints were found on the gun, and he did so because the government produced a police report saying that the gun was examined and no prints were found. After trial, however, Jones obtained from the Milwaukee Police Department a property inventory report with the number N00707 in a box labeled "Lab #." In his § 2255 motion, Jones claimed that this entry indicates that a lab report exists and that the government is withholding potentially exculpatory information.

---

[1]Although the government cites extensively to the trial transcripts in its brief, it did not make them part of the record on appeal. This oversight forced us to obtain the transcripts independently and that caused unnecessary delay. We would hope this sort of oversight would not be repeated in future cases.

The district court concluded that Jones could not show that Steinle's alleged conflict of interest adversely affected his performance, and that Jones was merely speculating that the government possessed an undisclosed fingerprint analysis which would have helped him. Jones renews his conflict claim, but rather than argue the merits of his *Brady* claim, he challenges the court's denial of a discovery motion he filed pursuant to Rule 6(a) pertaining to § 2255 proceedings. Jones asserts that such discovery was necessary to help him prove that the government withheld a fingerprint report.

A § 2255 petitioner can assert that his counsel was ineffective due to a conflict of interest claim in either of two ways. *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). First, under *Strickland v. Washington*, 466 U.S. 668 (1984), he may show that his attorney had a potential conflict of interest that prejudiced his defense. *Id.* at 692. Alternatively, under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), he may demonstrate that his attorney was plagued by an actual conflict of interest that adversely affected his performance. *Id.* at 349-50; *Hall*, 371 F.3d at 973. Although "a mere theoretical division of loyalties" can create a *potential* conflict of interest, *see Mickens v. Taylor*, 535 U.S. 162, 171 (2002), an *actual* conflict of interest arises only when an attorney is in fact "torn between two different interests," *United States v. Holman*, 314 F.3d 837, 845 (7th Cir. 2002). In other words, an actual conflict is "precisely a conflict *that affected counsel's performance.*" *See Mickens*, 535 U.S. at 171 (emphasis in original).

Jones's conflict-of-interest theory is purely speculative. Jones asserts that Steinle did not call Withers or Christian because he was afraid that testimony from either might lead to disclosure that Withers had accused the lawyer of trying to influence his testimony. The evidence of counsel's misconduct, says Jones, is Withers's statement to the police that Steinle visited him in jail and said, "You're gonna take the case, right?" But this statement shows only that Steinle did his job; after learning that Withers apparently had confessed to Christian, Steinle went to Withers to confirm that he would admit his wrongdoing. Jones's conflict-of-interest claim hinges on his own sinister spin to an objectively innocent statement (and assumes that Withers accurately reported what Steinle said). Steinle could not have meant to corruptly influence Withers unless Jones's family indeed had bribed Withers and Steinle knew as much. That is not what Jones wants us to believe; instead, he reasons that Steinle had a conflict because he feared that Withers would accuse him of wrongdoing.

An attorney's fear that vigorously representing his client could prompt investigation into his own wrongdoing can create a conflict of interest. *United States v. Jones*, 900 F.2d 512, 519 (2d Cir. 1990). But "[a]llegations of wrongdoing alone cannot rise to the level of an actual conflict unless the charges have some foundation." *Id.*; *see Moss v. United States*, 323 F.3d 445, 463-64 (6th Cir. 2003)

(noting that if a conflict is "merely hypothetical, there is no constitutional violation"). Here, Withers's supposed accusation could have foundation only if Steinle was involved in a bribery plot with Jones's family, and Jones has disavowed that possibility. Moreover, Withers told the police what Steinle supposedly said, so calling Withers or Christian would not have exposed Steinle to any greater scrutiny.

Even if the alleged conflict rose to the level of a potential conflict, Jones could not make the requisite showing of prejudice. *See Strickland*, 466 U.S. at 692; *Hall*, 371 F.3d at 973. *Strickland* recognizes the need to give leeway to counsel's tactical determinations, *see Floyd v. Hanks*, 364 F.3d 847, 851-52 (7th Cir. 2004), and counsel's strategic choice not to call a witness is "virtually unchallengeable" where the choice is made after thorough investigation, *see United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir. 1990). As the district court observed, if Steinle tried to elicit an in-court confession from Withers or introduced his out-of-court confession through Christian, the government would have impeached Withers with his statement to the police that Jones owned the gun, that Jones's family tried to pay him to take the fall, and that Jones previously had paid him to assume responsibility for a drug case. In essence Steinle and the government both concluded that Withers's statements to Christian and to the government were unreliable, which is why at trial the lawyers for both parties agreed not to elicit either statement or call either witness.

Jones does not challenge on appeal the denial of his *Brady* claim; instead he argues that the court should have granted his Rule 6(a) motion for further discovery. Even if this contention is within the scope of the question certified for appeal, it is without merit. Under Rule 6(a) the court may authorize discovery "for good cause," and we review its decision not to allow discovery for abuse of discretion. *See Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (discussing Rule 6(a) of the rules governing proceedings under 28 U.S.C. § 2254). Jones's Rule 6(a) motion was based solely on his hope that a lab number on a police inventory report means that the government is withholding a fingerprint analysis. His speculation does not constitute good cause. *Cf. Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997). In any event, even in Jones's best-case scenario—that further discovery would produce a fingerprint report showing only Withers's prints—he would not prevail on his *Brady* claim. *Brady* applies only where the government withholds exculpatory evidence. *See United States v. Bhutani*, 175 F.3d 572, 577 (7th Cir. 1999). Withers's prints on the gun would suggest only that Withers possessed the gun at some point, not that Jones wasn't brandishing it just as Barber said he was.

AFFIRMED.